# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **B.F. and M.K.**

**No. 16-0831** (Jackson County 15-JA-148 & 15-JA-149)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.K., by counsel Ryanne A. Ball, appeals the Circuit Court of Jackson County's August 3, 2016, order terminating his parental rights to B.F. and M.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Melinda C. Dugas, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his request for a post-adjudicatory improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Although the abuse of petitioner's step-son, M.F., forms the basis of this petition, M.F. is not the subject of petitioner's appeal. In December of 2015, M.F., experienced a serious behavioral issue at school, related to his autism.[2] M.F.'s teacher called the home and petitioner picked the child up from the school. When M.F. returned to school later that same week, he had noticeable injuries on his face and forehead, including a black eye. Ultimately, in December of 2015, the DHHR filed an abuse and neglect petition against petitioner and the mother of M.K. as

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Because petitioner is not the biological father of M.F., the circuit court made no ruling in regard to the child in relation to this petitioner. Moreover, on appeal to this Court, petitioner makes no argument in regard to M.F. Accordingly, M.F. is not the subject of petitioner's appeal.

1

to B.F. and M.K.[3] Specifically, the petition alleged that petitioner and the mother engaged in domestic violence in the children's presence and that petitioner and the mother physically and emotionally abused the children. An amended abuse and neglect petition was filed in April of 2016, alleging that petitioner and the mother attempted to interfere with the children's statements to the DHHR.

In January of 2016, the circuit court held a preliminary hearing wherein it heard the testimony of several witnesses. A DHHR worker testified that she observed bruises on M.F. and that M.F. reported to her that petitioner threw him on the ground, causing the bruises. She also testified that M.F. hid under a chair and reported that the bruises were the reason he was absent from school. The worker further testified that when she confronted M.F. and M.K.'s mother about the allegations of abuse, the mother told her that M.F. was "not able to make sentences or be understood." B.F.'s non-offending mother testified that she filed for a domestic violence protective order against petitioner in January of 2016, after he threatened to kill her. She also testified that, in May of 2015, B.F. returned from a visit with petitioner and had marks on his face, eyes, and chest, as well as bruises on his side and bottom. Respondent called petitioner to testify but the circuit court continued the matter to allow petitioner to further confer with his attorney regarding the implications of testifying at the preliminary hearing.

Also in January of 2016, the circuit court held a second preliminary hearing wherein it heard the testimony of another witness. M.F.'s teacher testified that she observed bruises on M.F.'s forehead and a black eye when he returned to school. She also testified that M.F. told her that petitioner pushed him down onto the floor. She further testified that M.F. did not have bruises on his forehead or a black eye when he left school on December 15, 2015. Following the testimony of the witnesses, the circuit court found that imminent danger existed at the time of the petition's filing and sustained the removal of B.F. and M.K. from the home. The circuit court ordered that petitioner, the mother of M.F. and M.K., and the children undergo psychological evaluations.

In May of 2016, the circuit court held an adjudicatory hearing wherein it heard testimony from the psychologist who evaluated petitioner and the mother of M.K. The psychologist testified that petitioner and the mother denied abusing the children. He also testified that petitioner had an unspecified personality disorder with antisocial and narcissistic features. He further testified that M.F. stated that his mother told him he was not supposed to acknowledge the abuse and he would be "back in the home soon." The psychologist opined that the children would be in danger if left in petitioner's care and testified that he could not formulate treatment recommendations because petitioner refused to acknowledge the abuse. At the conclusion of the hearing, the circuit court adjudicated petitioner as an abusing parent to B.F. and M.K.[4] Following

---

[3]According to the record on appeal, B.F. resided with his non-offending mother, J.S., and petitioner exercised weekend visitation with B.F. Additionally, M.K. resided primarily in petitioner's home.

[4]According to the record on appeal, the mother of M.K. was also adjudicated as an abusing parent as to M.K.

2

the adjudicatory hearing, petitioner and the mother filed written motions requesting post-adjudicatory improvement periods.

In July of 2016, the circuit court held a dispositional hearing. Petitioner failed to attend the hearing but was represented by his counsel. A DHHR worker testified that the DHHR was seeking termination of petitioner's parental rights because he had not accepted responsibility for his actions that led to the petition's filing. Petitioner presented no evidence in support of his previously filed motion for a post-adjudicatory improvement period. At the conclusion of the hearing, the circuit court found that petitioner "abandoned the case" because he failed to attend a scheduled multidisciplinary team ("MDT") meeting, failed to participate in the development of a family case plan, and failed to attend the dispositional hearing or present evidence in support of his motion. The circuit court also found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, terminated his parental rights to the children, and denied his motion for a post-adjudicatory improvement period.[5] It is from that August 3, 2016, order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of petitioner as an abusing parent, denial of his motion for a post-adjudicatory improvement period, or termination of his parental rights.

---

[5]The parental rights of both of M.K.'s parents were terminated below. According to the guardian, the child was placed in a foster home and the permanency plan is adoption therein. Additionally, following the termination of petitioner's parental rights to B.F.'s father, B.F. was placed with his non-offending mother with a permanency plan to remain in her home. Finally, the record indicates that E.K., the mother of M.K., has an additional child, M.F., who was also the subject of the proceedings below. The parental rights of both of M.F.'s biological parents were terminated below. According to the guardian in E.K.'s related appeal, M.F. was placed in a foster home and the permanency plan is adoption into that home. However, because petitioner is not the biological father of M.F., his permanency is not affected by this appeal.

On appeal, petitioner argues that the circuit court's findings of abuse were not supported by clear and convincing evidence. Petitioner asserts that the evidence presented at the adjudicatory hearing was insufficient to support the findings of abuse. West Virginia Code § 49-1-201 defines an "abused child" as "a child whose health or welfare is being harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, this Court has described the "clear and convincing" standard as one in which

> the evidence does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014).

In this case, as to the May of 2016 adjudication, the DHHR alleged that petitioner physically and emotionally abused the children. At the first preliminary hearing, multiple witnesses testified to observing injuries on M.F. and B.F after they were in petitioner's care, that M.F. reported that petitioner threw him on the ground and caused his injuries, and that the injuries were the reason he was absent from school. M.F.'s teacher testified that petitioner "hung up on her" when she telephoned petitioner in December of 2015, and was angry when he picked M.F. up from school. At the adjudicatory hearing, the psychologist testified that petitioner had an unspecified personality disorder with antisocial and narcissistic features. He also testified that he could not formulate treatment recommendations because petitioner refused to acknowledge the abuse.

Given the clear and convincing evidence of physical abuse, we find no error in the circuit court's order regarding adjudication. The circuit court found the testimony of the DHHR worker, M.F.'s teacher, B.K.'s non-offending mother, and the psychologist to be "unbiased and credible." Petitioner simply denied the abuse and refused to participate in remedying the abuse. While petitioner claimed that the children's injuries came from "roughhousing" and self-injurious behavior, he provided no evidentiary support for such a claim beyond his self-serving testimony. Moreover, while no specific allegations of abuse were made as to B.F. and M.K., M.K. lived primarily in petitioner's home and B.K. resided in the home when petitioner exercised weekend visitation. We have previously articulated that the abuse of one child in the home equates to the abuse of all the children in the home. As we stated in Syllabus Point 2 of *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995):

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-l-201(a) (2015).]

Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The circuit court acted within its discretion by discounting petitioner's testimony and crediting the testimony of the DHHR worker, M.F.'s teacher, and the psychologist. Therefore, we find adequate evidentiary support for the finding that petitioner abused the children. We further find no evidentiary support for petitioner's claim that the children caused their own injuries. Based on our review of the record on appeal, the circuit court committed no error in finding that the circumstances of this case meet the statutory definition of an "abused child."

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support of his argument, and without citation to the record, petitioner asserts that he "timely filed a written motion requesting a post-adjudicatory improvement period" and presented evidence that he was "willing and wanting to fully participate" in an improvement period. Upon our review, however, the Court finds that petitioner failed to satisfy the applicable burden to obtain an improvement period. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'"*In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is clear from the record on appeal that petitioner failed to demonstrate his ability to fully participate in an improvement period. The circuit court was presented with evidence that petitioner failed to appear for scheduled MDT meetings and the dispositional hearing. Further, petitioner failed to accept responsibility for his actions and their impact on the children as he denied the allegations of abuse.

> Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.,* 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.,* 215 W.Va. at 217, 599 S.E.2d at 640). As such, it is clear that petitioner failed to establish that he was likely

to fully participate in a post-adjudicatory improvement period and we find no error in the circuit court denying petitioner's motion.

Finally, petitioner argues that the circuit court erred in terminating his parental rights. Specifically, he contends that the circuit court erred in terminating his parental rights without granting his request for an improvement period. The Court, however, does not agree. Petitioner's argument ignores the facts of the case presented below. Specifically, the circuit court found that petitioner failed to remedy the conditions of abuse and neglect in the home. These findings were based on substantial evidence, including evidence that petitioner failed to fully participate in the proceedings or accept responsibility for his actions. Further, we have previously held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *Charity H.*, 215 W.Va. at 216, 599 S.E.2d at 639 (2004).

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child .
> . . .

Based upon the substantial evidence outlined above, the circuit court found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because, according to the circuit court, he abandoned the proceedings below and made himself "unavailable to participate in the creation of a family case plan." The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 3, 2016, order is hereby affirmed.

6

Affirmed.

**ISSUED**:  May 22, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker